POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTER DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Double G & T Dairy, a<br>California partnership,<br><br>    Debtor. | Case No. 09-10136-B-7 |
| James Salven, Trustee,<br><br>    Plaintiff,<br><br>v.<br><br>Michael Murray Farms, Inc.,<br>Dias and Fragoso, Inc., et al.,<br><br>    Defendants. | Adversary Proc. No. 09-1209<br><br>DC No. HAR-2 |

**MEMORANDUM DECISION REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

This disposition is not appropriate for publication. Although it may cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Hilton A. Ryder, Esq., of McCormick Barstow, Sheppard, Wayte & Carruth, LLP, appeared on behalf of the plaintiff, James Salven, chapter 7 trustee (the "Trustee").

Jonette M. Montgomery, Esq., of the Dias Law Firm appeared on behalf of the defendants Michael Murray Farms, Inc., and Dias and Fragoso, Inc. (the "Defendants").

    This matter comes before the court on cross-motions for summary judgment. The material facts are undisputed. The parties seek a determination of whether the

Defendants are jointly entitled to receive the proceeds of certain equipment sold by the Trustee. That question turns on whether the Defendants jointly held an enforceable lien against the equipment before the bankruptcy commenced. After reviewing the record, the undisputed evidence, and the arguments of counsel, the court is persuaded that the Defendants should prevail.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(K).

**Background and Findings of Fact.**

The debtor in this case, Double G & T Dairy (the "Debtor"), was a California partnership which operated a dairy. Defendant Michael Murray Farms, Inc. ("Murray"), is a grower and producer of cattle feed products, including corn and wheat silage. Defendant Dias & Fragoso, Inc., ("D&F") is a custom harvester of silage. Prior to this bankruptcy, the Debtor purchased large quantities of cattle feed, specifically silage, that was grown and harvested by the Defendants. To secure payment for the silage, in September 2008, the parties entered into an agreement entitled "Feed Lien Agreement" (the "Lien Agreement"). The Lien Agreement recites that the Debtor was at that time already indebted to the Defendants in the approximate amount of $40,000. There is no dispute that the Defendants' interest under the Lien Agreement was properly perfected by the filing of U.C.C. Financing Statements with the California Secretary of State.

In January 2009, the Debtor ceased operating and filed a petition for relief under chapter 7. All of the dairy cattle were sold by the Trustee free and clear of liens shortly after commencement of the case and the proceeds were distributed to the lienholder. Subsequently, all of the Debtor's remaining personal property,

including numerous pieces of dairy equipment (the "Equipment"), was also sold at public auction. With the consent of the lienholders, the Equipment was sold free and clear of liens provided the various liens would attach to the proceeds.

In September 2009, the Trustee filed this adversary proceeding against several creditors, who claimed liens against the Equipment proceeds, to determine the respective rights and interests therein. All of the claims have been settled and dismissed except the claim for declaratory relief against Murray and D&F. The Trustee is still holding the sum of $33,489.72 from sale of the Equipment which the Defendants contend is their collateral under the terms of the Lien Agreement.

Murray filed a proof of claim in the amount of $121,736.83. Attached to Murray's proof of claim were statements of account showing charges totaling approximately $52,000 for, *inter alia*, corn and wheat silage. D&F also filed a proof of claim in the amount of $23,491.32 supported by statements of account showing numerous charges for "chopping & hauling [silage]." Both claims purport to be secured by the Lien Agreement. Both proofs of claim include copies of the Lien Agreement and electronically filed U.C.C. Financing Statements.

**The Lien Agreement.**

For the purposes of this litigation, the pertinent provisions of the Lien Agreement are set forth below:

> 3. DAIRY hereby agrees that title to all the Silage shall remain in the name of MURRAY and D&F until such time as DAIRY has remitted payment in full for all Silage and harvesting purchased hereunder and title to the Silage shall be held by D&F as security for the payment required hereunder.
>
> 4. *As additional security for the performance hereunder, DAIRY further agrees that it shall cause title to any and all of equipment on the dairy (hereinafter "Equipment") shall also be held by MURRAY and D&F until DAIRY has remitted payment in full hereunder.*[1]

///

---

[1] All emphasis is added.

> 6. DAIRY further represents and covenants that the *Silage and Equipment (hereinafter collectively referred to as "Collateral")* are free of all other encumbrances, defenses and liens (other than the lien granted hereunder), and DAIRY will not encumber or allow to be encumbered the Collateral without the prior written consent of MURRAY and D&F or enter into any agreement that could restrict exercise of the rights of MURRAY and D&F hereunder.
>
> 7. DAIRY shall pay, prior to the delinquency date, all taxes, liens, assessments and other charges levied against the Collateral . . . . (Emphasis added.)

### Issues Presented.

The single issue in controversy is a question of law: Did the Lien Agreement, together with the U.C.C. Financing Statements, create an enforceable security interest in the Equipment under applicable nonbankruptcy law? The Trustee does not dispute that the parties intended, by execution of those documents, to create a security interest in favor of the Defendants. Further, there is no dispute that the Lien Agreement, specifically paragraph 3, adequately reserved a purchase money lien against the silage. However, the Lien Agreement was drafted to secure payment for the purchase of dairy feed, not Equipment. The Debtor did not purchase the Equipment from the Defendants and the language of the Lien Agreement, specifically paragraph 4, is ambiguous in its reference to the Equipment's title.

### Analysis and Conclusions of Law.

In bankruptcy, an interest in property, such as a security interest, is usually defined by state law. *See Butner v. United States*, 440 U.S. 48, 54-57 (1979). Because one of the purposes of the California Commercial Code (Cal. Com. Code) is to "make uniform the law among the various jurisdictions," the court may look to cases from other jurisdictions to interpret its application. *Needle v. Lasco Ind., Inc.*, 10 Cal.App.3d 1105, 1108 (1970).

The term "security agreement" means an "agreement that creates or provides for a security interest." Cal. Com. Code § 9102(a)(73). "A security interest attaches

4

to collateral when it becomes enforceable against the debtor with respect to the collateral . . . ." Cal. Com. Code § 9203(a). A security interest becomes enforceable against the debtor and third parties with respect to the collateral when each of the following conditions is satisfied: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. Cal. Com. Code § 9203(b). Only the third element is disputed here; whether the parties actually agreed, through execution of the Lien Agreement, that a lien should attach to the Equipment. It is undisputed that the Defendants gave value for the Lien Agreement and the Debtor had the power to transfer a security interest in the Equipment.

Under California law, no special form is required to "create or provide for a security interest." *In re Amex-Protein Development Corp.*, 504 F.2d 1056, 1058 (9th Cir. 1974). A security interest is created if the documents, taken together, establish an intention to create a security interest. *Id.* at 1059. An effective security agreement can be found when the U.C.C. Financing Statement is considered together with the other documents. *Komas v. Future Systems, Inc.*, 71 Cal.App.3d 809, 813 (1977) (citations omitted). The term "agreement" as used in commercial transactions is defined to mean, "the bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealing, or usage of trade . . . ." Cal. Com. Code § 1201(b)(3).

The Trustee contends that the Lien Agreement did not create an enforceable security interest in the Equipment because paragraph 4 of the Lien Agreement purports to require the Debtor to "cause title to [the Equipment to] be held by [the Defendants]" until the Debtor has paid for the silage. Based on Cal. Com. Code § 2401(1), the trustee argues that paragraph 4 is ineffective because the Defendants never held title to, or any other interest in the Equipment.

The Trustee is correct in his assertion that paragraph 4 cannot *create* a right

5

Case 09-01209    Filed 07/28/10    Doc 51

to title unless the Equipment was first owned or sold by the Defendants. The Defendants do not contend that paragraph 4 created an ownership interest in the Equipment. However, paragraph 4 does evidence the parties' intent to give the Defendants some interest in the Equipment until they were paid for the silage. The Defendants' position is further supported by the language in paragraph 5, which refers to the Equipment as "collateral," and by the reference to "any and all equipment owned by Double G & T Dairy" in the U.C.C. Financing Statements. From these documents, the court can infer that the parties intended to create a security interest. As noted above, that intent is not disputed by the Trustee. This is all that is required to create a security agreement capable of supporting a properly filed U.C.C. Financing Statement. *Komas v. Future Systems, Inc.*, 71 Cal.App.3d 809, 812-14 (1977); *Safe Deposit Bank & Trust Co. v. Berman*, 393 F.2d 401 (1st Cir. 1968); *Sommers v. International Business Machines*, 6409 F.2d 686 (5th Cir. 1981); *New West Fruit Corp. v. Coastal Berry Corp.*, 1 Cal.App.4th 92 (1991) (While no particular form of words is required to give rise to a security interest, the language of the agreement and the circumstances of the transaction must reveal an intent by the parties to grant a security interest to the creditor.); *United Virginia Bank/Seaboard Nat. v. B.F. Saul Real Estate Inv. Trust*, 641 F.2d 185 (4th Cir. 1981); *Barton v. Chemical Bank*, 577 F.2d 1329 (5th Cir. 1978) (It is not necessary to state expressly that a security interest is being created or granted. It is sufficient to recite that certain personal property is encumbered as security for an obligation.)

The Trustee also relies on the analysis in *Needle v. Lasco*, 10 Cal.App.3d 1105. However, the decision in *Needle* is inapposite. The court in *Needle* held that a U.C.C. Financing Statement, *standing alone*, cannot create an enforceable security interest *unless* it contains language that grants such an interest and identifies the obligation for which it serves as collateral. *Id.* at 1107. The Defendants do not contend that the U.C.C. Financing Statements *create* the security interest in the Equipment. As in *Needle*, the language in the U.C.C. Financing Statements merely

refers to the Debtor's "Equipment" as collateral. It is the package of documents: (1) the Security Agreement, with its clearly stated intention and description of the obligation for which the Equipment serves as collateral; and (2) the related U.C.C. Financing Statements, which provide notice to creditors, that creates the enforceable security interest.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Lien Agreement created an enforceable security interest in the Debtor's Equipment in favor of the Defendants. That security interest was properly perfected by the U.C.C. Financing Statements. Accordingly, the Trustee's motion for summary judgment will be denied; the Defendants' counter-motion for summary judgment will be granted. Murray and D&F are entitled to receive the Equipment proceeds which the Trustee is holding. The Defendants shall submit a proposed judgment consistent herewith. Entry of that judgment shall conclude the adversary proceeding.

Dated: July  28 , 2010

W. Richard Lee
United States Bankruptcy Judge